

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

*Overruled in part by V-1475*

Honorable John D. Reed, Commissioner
Bureau of Labor Statistics
Austin, Texas

Dear Sir:

Opinion No. O-6242
Re: Construction of Penal
Code, Article 209, on
the right of an employee
to absent himself to
vote, and related ques-
tions.

You request our opinion on the following:

"....

"Inquiry has been made of this office as to
proper interpretation and application of this
article (P.C., Art. 209). In order to properly
answer those inquiries will you please answer
the following questions with reference to said
statute?

"Would an employee working only a part of
the time the polls are open on election day be
entitled to absent himself from his job for the
purpose of voting?

"If an employee is entitled to take time
off from his work to vote must this time off be
compensated at his regular rate of pay by his
employer?

"If the answer to question two is in the af-
firmative would the employee be privileged to
leave his job at any time he desired for this
purpose or would the employer be within his
rights in prescribing the time allowed during
the day for the purpose of voting?

"...."

Statutory provisions pertinent to your questions are:

Penal Code, 1925, Article 209:

"Whoever refuses to an employe entitled to vote the privilege of attending the polls, or subjects such employe to a penalty or deduction of wages because of the exercise of such privilege, shall be fined not to exceed five hundred dollars."

Vernon's Annotated Civil Statutes, 1925, Article 2930:

". . . In all elections, general, special, or primary, the polls shall be open from seven o'clock a. m. to seven o'clock p. m. in all counties having a population of 150,000 or more according to the last Federal census and in all other counties the polls shall be opened at 8 a. m. and shall remain open until 7 p. m. The election shall be held for one day only."

V. A. C. S., 1925, Article 4591:

". . . every day on which an election is held throughout the State, are declared legal holidays, on which all the public offices of the State may be closed and shall be considered and treated as Sunday or the Christian Sabbath for all purposes regarding the presenting for the payment or acceptance and of protesting for and giving notice of the dishonor of bills of exchange, bank checks and promissory notes placed by the law upon the footing of bills of exchange."

Our statute does not prohibit labor on legal holidays.

"The word 'holiday' as interpreted by the courts does not import the same status as Sunday and a declaration in a statute that a certain day shall be a legal holiday gives that day

Honorable John D. Reed, page 3

the attributes of Sunday only to the extent of
the express words of the statute." Sunday and
Holidays, 39 Tex. Jur. 857, par. 2, n. I.

Penal Code, 1925, Article 209, is a part of the
Election Law of 1905 (Acts of 29th Leg., 1st Called Sess.,
Ch. 11). Section 175 of that Act (page 562) is as follows:

"Any person or corporation who refuses to
an employe entitled to vote the privilege of
attending the polls, or subjects such employe
to a penalty or deduction of wages because of
the exercise of such privilege is guilty of a
misdemeanor."

The codification of 1911, Penal Code, Article 244, incorpo-
rated this provision in its precise phraseology. The 1925
codifiers brought it forward in its present form, without,
of course, changing its intent or purpose.

Although other states have enacted legislation
aimed to require employers to allow their employees time to
vote without deduction of pay, our investigation has dis-
closed only two cases (both of them Illinois cases) involv-
ing the questions under discussion.

A case of first impression is that of People vs.
Chicago, M. & St. P. R. Co., (1923) 306 Ill. 486, 138 N. E.
155, 28 A. L. R. 610. The court there held:

". . . The provisions of said statute
that gave him the right to absent himself for
two hours on election day and to cast his vote,
and which required his employer, plaintiff in
error, to give him this opportunity of attend-
ing the election for such purpose, are wholesome
provisions of the statute, and are valid and
binding; but the provision of the statute that
requires the employer to pay him at the rate of
85 cents per hour for the time employed in at-
tending the election and casting his vote -- or,
speaking more accurately, the provision requir-
ing the employer to pay him for two hours' time
at such rate for exercising such privilege --
is invalid, because it is an unreasonable

Honorable John D. Reed, page 4

abridgment of the right to make contracts. The legislature had just as much right to require employers to pay their employees for the time they necessarily would be compelled to use in looking after any sick member or members of their family as it had to pass the provision in question. Other striking examples of void legislation of the character in question might be stated, and in which it would appear that the employee would be engaged in a matter of pursuit equally as commendable and as essential to his own personal welfare; but further comment is unnecessary, as it is entirely clear that the provision in question is an unreasonable abridgment of the right to contract, and therefore void.

"It is claimed by the people that the provision in question is sustainable under what is known as the police power of the state, commonly defined as that inherent plenary power in the state to prohibit all things hurtful to the comfort, welfare, and safety of society. The relation of employer and employee is purely voluntary, resting upon the contract of the parties. Every man has a natural right to hire his services to anyone he pleases, or refrain from such hiring, and it is equally the right of everyone to determine whose services he will hire. The state has no right to interfere in a private employment and stipulate the terms of the services to be rendered. Tiedeman, Pol. Power, §§ 176, 178. It is true that the state does have the right, under its police powers, to pass laws that tend to promote the health, safety, or morals of such employees as Turney, because of the fact that such laws would tend to promote the health, comfort, safety, and welfare of society. The act in question, as contended by plaintiff in error, does not in any way, so far as we are able to see, tend to promote the health, safety, or morals of such employees. The provisions in question are not adapted to the object for which the law was enacted, and cannot be said to secure public comfort, welfare, safety, or public morals. There is no contention, and there can be none made

Honorable John D. Reed, page 5

with any reasonable showing, that the provision
in question tends to promote the safety or health
of any employee.  It has always been the policy
of our laws to condemn the idea of any voter be-
ing paid for exercising the privilege of an elec-
tor or voter.  The right to vote is simply one
of the privileges guaranteed to every citizen
of this country who possesses the requisite qual-
ifications.  It is not only a right, but should
be regarded as a duty of the citizen, where he
is reasonably able physically to perform that
duty.  It is not the constitutional right of any
citizen to be paid for the exercise of his right
to vote, and the holding of the provision of the
statute void does not violate the right of any
citizen, including those who are employed to
labor.  This provision of the statute is not sus-
tainable under the police power of the state, and
it does violate the constitutional provisions
aforesaid, and therefore must be declared void.
Besides, 'no exercise of the police power can
disregard the constitutional guaranties in re-
spect to the taking of private property, due pro-
cess, and equal protection' of the laws, and it
should not 'override the demands of natural jus-
tice.' . . ."

Our Supreme Court, opinion by Chief Justice Cure-
ton, in Travelers Ins. Co. vs. Marshall, (1934) 76 S. W.
(2d) 1007, at page 1011, cited with approval the above case
in holding the Emergency Moratorium Law unconstitutional be-
cause it impaired the obligation of contracts.

The other case is that of McAlpine vs. Dimick,
(1927) 326 Ill. 240, 157 N. E. 235, holding a portion of the
Illinois primary law invalid which gave employees the right
to absent themselves from employment for two hours on pri-
mary election day to vote, without deduction from their
salaries.  The court, citing the first mentioned case, said:

". . . The provision of section 7, giv-
ing employees the right to absent themselves
from their employment for two hours on election

Honorable John D. Reed, page 6

> day for the purpose of voting without any de-
> duction from their salaries or wages on ac-
> count of such absence is also unconstitution-
> al, being a violation of section 2, article 2
> of the Constitution. People v. Chicago, Mil-
> waukee & St. Paul Railway Co., 306 Ill. 486,
> 138 N. E. 155, 28 A. L. R. 610. These sections
> are not, however, of such a character as to in-
> terfere with the operation of the rest of the
> act, if they are stricken from it, and there-
> fore do not affect the constitutionality of the
> entire act."

The right of franchise in our democracy is of sup-
reme importance and its exercise should be zealously guard-
ed. "Statutes regulating the rights of citizens to vote
are of great public interest, and, therefore, are given a
broad interpretation to secure for the citizen his right to
vote and to insure the election of those officers who are
the people's choice." Sutherland, Statutory Construction,
Third Edition, Volume 3, page 445, par. 7215, n. 1.

We therefore answer your first question: An em-
ployee is entitled to absent himself from his job for a
reasonable time for the purpose of voting. See our answer
to question No. 3.

Second question: We believe that that part of
the statute prohibiting the deduction of wages when the
employee absents himself from his work in order to vote is
invalid.

Third question: Bearing in mind that our polls
are open until 7:00 P.M., that a statute should be inter-
preted by its equity, and of the interdependence of em-
ployer and employee in our industrial civilization, it is
our opinion that an employer is within the statute and his
rights in prescribing the time allowed during the day for
the purpose of voting. The time allowed should be suffi-
cient and fair so as to fully and completely permit the
employee to exercise his suffrage. Such regulations would

Honorable John D. Reed, page 7

vary according to local conditions; but it should give the employee ample and convenient time within which to vote.

Trusting that the above answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

David Wuntch
Assistant

DW:db

APPROVED
OPINION
COMMITTEE

BY
CHAIRMAN